UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| MARIA C., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-956-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Maria C. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 20).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 14, 16. Plaintiff also filed a reply brief. *See* ECF No. 19. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 14) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 16) is **GRANTED**.

## BACKGROUND

On February 3, 2014, Plaintiff protectively filed her DIB application alleging disability beginning October 2, 2013 (the disability onset date), due to Addison's disease, mental illness, weak bones, and neuropathy. Transcript ("Tr.") 162-68, 182. Plaintiff's claim was denied initially on March 19, 2014, after which she requested an administrative hearing. Tr. 101-04. On April 27,

2016, Administrative Law Judge Michelle S. Marcus ("ALJ Marcus") conducted a video hearing from Albany, New York. Tr. 10.  Plaintiff appeared and testified from Buffalo, New York, and was represented by Christopher J. Grover, an attorney. *Id*. Christine Ditrinco, an impartial vocational expert, also appeared at the hearing. *Id*.

ALJ Marcus issued an unfavorable decision on July 6, 2016, finding that Plaintiff was not disabled. Tr. 10-29. On September 12, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The July 6, 2016 decision issued by ALJ Marcus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g). Plaintiff subsequently filed a claim in the United Stated District Court for the Western District of New York. *See* Case No. 1:17-CV-1139-HBS. On April 17, 2019, the Court issued a issued a decision and remand order (Tr. 1052-67), followed by an Appeals Council order of remand issued on June 12, 2019 (Tr. 1047-49).

Thereafter, on January 30, 2020, Administrative Law Judge Timothy M. McGuan (the "ALJ") held a hearing in Buffalo, New York. Tr. 948. Plaintiff appeared and testified at the hearing and was represented by Megan D. Kale, an attorney. *Id*. Impartial vocational expert Ruth Baruch also testified at the hearing. *Id*.  The ALJ issued an unfavorable decision on March 30, 2020. Tr. 948-68. Having exhausted her administrative remedies, Plaintiff appealed the decision directly to this Court.

## **LEGAL STANDARD**

### I.    **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §

405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or

mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## <u>ADMINISTRATIVE LAW JUDGE'S FINDINGS</u>

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 30, 2020 decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 2, 2013 through her date last insured of December 31, 2018 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: Addison's disease, anxiety, depression, neuropathy, degenerative disc disease of the lumbar spine (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. Through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)[1] except she can have no more than incidental contact with the public; can do simple, unskilled work of a routine and repetitive nature with no production quotas.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 4, 1972 and was 46 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 2, 2013, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

Tr. 948-68.

Accordingly, the ALJ determined that, for the application for a period of disability and disability insurance benefits, protectively filed on February 3, 2014, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the last date insured. Tr. 968.

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS

Plaintiff asserts a single point of error. Plaintiff contends that the ALJ relied on his own "quasi-medical judgment" when assessing Plaintiff's RFC, and his finding that Plaintiff could perform a range of light work lacked "direct support," and therefore, was not supported by substantial evidence. *See* ECF No. 14-1 at 18-26. More specifically, Plaintiff claims that the ALJ's RFC finding was not supported by substantial evidence because it did not mirror any particular medical opinion. *See id.*

The Commissioner argues in response that although Plaintiff's physical and mental impairments significantly limited her work-related abilities, the ALJ's finding that Plaintiff could only perform a range of light, simple work was supported by substantial evidence. *See* ECF No. 16-1 at 2, 7-17.

The Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the ALJ's decision and the entire record, the Court finds that substantial evidence, including the medical opinion evidence, evidence showing only routine and conservative treatment and unremarkable physical and mental status findings, as well as Plaintiff's wide range of daily activities, supported the ALJ's finding that Plaintiff could perform a range of simple work despite her conditions.

As noted above, the ALJ found that Plaintiff had the RFC to perform a range of light work, with no more than incidental contact with the public, and she can do simple unskilled work of a routine and repetitive nature, with no production quota. Tr. 955. A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required."

*Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed and weighed the opinion evidence under the Commissioner's regulations.[2] Plaintiff argues that the ALJ relied "only on his own surmise of the examination findings and medical evidence of record" when formulating

[2] New regulations regarding the evaluation of medical evidence and rescission of Social Security Rulings 96-2p, 96-5p, 96-6p, and 06-03p, took effect on March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff's application was dated February 3, 2014, the previous regulations are applicable to her claim.

Plaintiff's RFC. *See* ECF No. 14-1 at 18-26. Plaintiff further argues that the ALJ is "not qualified to interpret raw medical findings and diagnoses into functional terms without support of a medical professional." *See id.* at 20. However, Plaintiff's argument wrongly presumes that RFCs are medical determinations and thus, outside the ALJ's expertise. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited

in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Furthermore, it is the responsibility of the ALJ to resolve conflicts in the evidence and to weigh the evidence available to make an RFC finding that is consistent with the record as a whole. *See Corbiere v. Berryhill*, 760 F. App'x 54, 57 (2d Cir. 2019) (holding that the ALJ properly resolved conflicts in the medical evidence after considering the record in its entirety).

Plaintiff complains that it is unclear, based on the opinions and evidence of record, how the ALJ formulated his RFC finding and the limitations contained therein (*see* ECF No. 14-1 at 18-26); however, the ALJ carefully explained how he weighed the various medical opinions of record when formulating the RFC finding and provided ample citations to the record to support his conclusions. Tr. 963-66. *See* 20 C.F.R. § 404.1527 (explaining how opinion evidence is evaluated for claims filed before March 27, 2017).

First, with respect to Plaintiff's physical limitations, the ALJ considered the March 6, 2014 report and opinion of internal medicine consultative examiner Donna Miller, M.D. ("Dr. Miller"). Tr. 963, 593-96. On physical examination, Plaintiff appeared to be in no acute distress; she had normal gait; and she was able to squat to 50% of normal. Tr. 593. Dr. Miller diagnosed Plaintiff with Addison's disease, osteopenia, and neuropathy of her feet. Tr. 595. Dr. Miller opined that Plaintiff had no significant physical limitations but recommended that Plaintiff should avoid exposure to extreme temperatures due to her neuropathy. Tr. 596. The ALJ granted "some weight" to the portion of Dr. Miller's assessment that Plaintiff had no significant physical limitations, because she was able to clinically interview and evaluate Plaintiff, and her opinion was based on her clinical examination findings. Tr. 963, 596.

However, as the ALJ explained, the fact that Dr. Miller did not specifically offer an opinion regarding Plaintiff's ability to perform or sustain basic work-related activities such as standing, walking, sitting, lifting, reaching, carrying, pushing or pulling, and did not suggest any weight restrictions for lifting, carrying, pushing and pulling, "detract[ed] from the probative value of her medical opinion." Tr. 963. The ALJ went on to explain that nothing in Dr. Miller's report or opinion statement supported greater functional limitations than those established in the RFC (such as the need for extra breaks or the ability to take naps throughout the workday). *Id*. The ALJ further explained that Dr. Miller's assessment that Plaintiff should avoid temperature extremes given her neuropathy was granted "little weight" because it was not consistent with the clinical findings and the objective evidence in the record. *Id*. Specifically, the ALJ noted there was no objective evidence of deficits relative to diminished sensation, or EMG findings demonstrating the neuropathy. *Id*. Thus, overall, the ALJ reasonably gave the opinion "some small weight" to the extent that it supported the RFC for a reduced range of light work. *Id*.

By contrast, the ALJ assigned little weight to two check-box forms completed by primary care physician Qamrunnisa Rahman, M.D. ("Dr. Rahman") (Tr. 804-08, 940-44), and a form completed after Plaintiff's date last insured by primary care physician Paul Campana, M.D. ("Dr. Campana") (Tr. 1492-98). Tr. 966, 963-64. On June 16, 2015, Dr. Rahman, completed a Physical Residual Functional Capacity Questionnaire and stated that Plaintiff had aches and pains, including lower back pain, and fatigue; he opined that Plaintiff was able to lift less than 10 pounds occasionally and 10 pounds rarely, but was never able to lift more than twenty pounds. Tr. 804. Dr. Rahman also indicated that Plaintiff's pain was severe enough to interfere with her ability to sustain attention and concentration necessary to perform even simple work tasks "occasionally," defined in the form as between 6% to 33% of an eight-hour workday. Tr. 805.

Dr. Rahman completed another Physical Residual Functional Capacity Questionnaire on May 6, 2016. Tr. 940-944. In that form, Dr. Rahman stated that Plaintiff was only able to sit for 30 minutes at a time. Tr. 941. Dr. Rahman indicated that Plaintiff was able to perform low-stress jobs and that her experience of pain or other symptoms was severe enough to interfere with her ability to concentrate and maintain attention to perform even simple work tasks occasionally. *Id*. Dr. Rahman further stated that his description of Plaintiff's symptoms and limitations dated back to 2006, when Dr. Rahman started seeing Plaintiff as a patient. Tr. 940, 943.

On September 30, 2019, after Plaintiff's date last insured, Dr. Campana completed a Physical Treating Medical Source Statement wherein he opined that Plaintiff can occasionally turn her head down, up, right, left, or hold her head in a static position, and she can occasionally climb stairs and only rarely twist, bend, stoop, crouch, and squat, but never climb ladders. Tr. 1495. Dr. Campana also indicated that Plaintiff had handling, fingering and reaching limitations. *Id*. Dr. Campana further opined that Plaintiff's impairments were likely to produce good days and bad days; she was likely to be absent form work more than four days per month due to her impairments and related treatment; and she was incapable of even low-stress jobs. Tr. 1495-96. Dr. Campana also opined that the heaviest weight Plaintiff should lift was less than 10 pounds occasionally, and she could sit, stand, and walk less than two hours total in an eight-hour workday. Tr. 1497.  Dr. Campana added that, given Plaintiff's immunosuppressed state, she needed to avoid temperature extremes, as well as dusty environments. Tr. 1498.

As the ALJ explained, the extreme limitations opined by Dr. Rahman and Dr. Campana merited little weight because they appeared to be based mostly on Plaintiff's subjectively reported symptoms and limitations; they were inconsistent with the unremarkable clinical findings documented throughout the record (including findings noted in Dr. Rahman's and Dr. Campana's

own treatment notes); and they conflicted with Plaintiff's wide array of daily activities. Tr. 963-64, 966. As the ALJ noted, these clinical findings included normal gait and stance, normal upper and lower extremity muscle strength, normal sensation, and generally normal range of motion throughout the musculoskeletal system. Tr. 963-64. The ALJ also noted that, while rare findings of tenderness and limited range of motion of the lumbar spine supported some degree of functional limitation, these findings did not support the degree of limitation opined by Dr. Rahman. Tr. 964.

An ALJ may properly discount the opinion of a treating physician when the opinion is internally inconsistent or inconsistent with other evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *see also Domm v. Colvin*, 579 F.App'x 27, 28 (2d Cir. Sept. 23, 2014) (summary order); *Micheli v. Astrue*, 501 F.App'x 26, 28-29 (2d Cir. Oct. 25, 2012) (summary order); *see also Burguess v. Berryhill*, No. 17-CV-6204L, 2018 WL 3569933, at *4 (W.D.N.Y. July 25, 2018) (ALJ properly discounted physician's opinions that were inconsistent with treatment records, objective testing, and history of conservative treatment). Thus, the ALJ reasonably assigned reduced weight to these opinions given their stark inconsistencies with the record. *See* 20 C.F.R. §§ 404.1527(c)(3), (4) (more weight is given to medical opinions that are well explained, supported by medical findings, and consistent with the record as a whole).

With respect to Plaintiff's mental limitations, the ALJ explained that he assigned the most probative weight to the opinions of consultative examiner Janine Ippolito, Psy.D. ("Dr. Ippolito") (Tr. 588-92), and state agency psychological consultant L. Hoffman ("Dr. Hoffman") (Tr. 90-94), both of whom opined that Plaintiff could perform a range of simple work. Tr. 961, 965. The ALJ explained that the opinions of Drs. Ippolito and Hoffman were "mutually supportive and consistent with the conservative nature of [Plaintiff's] mental health treatment since her brief inpatient

hospitalization, subsequent GAF[3] scores ranging from 50 to 60, the generally mild to normal findings on mental status examination, and documented subjective statements regarding symptom improvement with medication and the extent and nature of activities of daily living performed." Tr. 965.

By contrast, the ALJ did not accept the opinion of primary care provider Dr. Rahman that Plaintiff's symptoms would occasionally interfere with her ability to sustain attention and concentration for even simple tasks (Tr. 805, 940), or the marked and extreme mental limitations suggested by treating psychiatrist Dr. Ramesh Konakanchi (Tr. 794-98, 1475-79). Tr. 964-66. The ALJ reasonably found that their opinions were inconsistent with the generally unremarkable objective mental status findings documented throughout the record; Plaintiff's positive response to medications; her overall longitudinal routine and conservative treatment history; and her activities of daily living. Tr. 964-66. Thus, consistent with the applicable regulations, Dr. Rahman's and Dr. Konakanchi's restrictive mental limitations merited little weight because they were neither well supported nor consistent with the record. 20 C.F.R. §§ 404.1527(c)(3), (4).

As detailed above, the ALJ properly analyzed the medical opinions of record in accordance with the Commissioner's regulations and properly assessed Plaintiff's RFC. *See* 20 C.F.R. § 416.946(c) (the responsibility for determining a claimant's RFC rests solely with the ALJ); *see also Richardson*, 402 U.S. at 399 (it is within the sole province of the ALJ to weigh all evidence and resolve material conflicts); *see Galiotti v. Astrue*, 266 F. App'x 66, 67 (2d Cir. 2008) (it is the

---

[3] GAF, which is the acronym for Global Assessment of Functioning, is a "multiaxial scale used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information." *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018). GAF scores are designed to consider factors outside those used in disability determinations. A GAF score in the 51 to 60 range indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Zabala v. Astrue*, 595 F.3d 402, 406 n.3 (2d Cir. 2010) (internal citations omitted).

province of the ALJ to consider and resolve conflicts in the evidence as long as the decision rests

upon "adequate findings supported by evidence having rational probative force").

Here, the ALJ's RFC finding was supported by the medical opinion evidence, including

consultative examiner Dr. Miller's opinion that Plaintiff had no significant physical limitations, as

well as the opinions of consultative examiner Dr. Ippolito and state agency medical consultant Dr.

Hoffman that Plaintiff could perform a range of simple work. Tr. 963, 965. Furthermore, to the

extent the ALJ declined to accept greater limitations suggested by various other medical providers,

the ALJ meticulously explained his basis for assigning diminished weight and clearly articulated

how he arrived at the RFC finding. Tr. 955-66. Accordingly, the Court finds no error. *See Wynn v.*

*Comm'r. of Soc. Sec.*, 342 F.Supp.3d 340, 349 (W.D.N.Y. 2018) ("Although the ALJ did not adopt

the opinions of Dr. Ransom or Dr. Siddiqui in their entirety, she adequately explained her reasons

for not doing so, and adjusted their opinions accordingly in formulating the RFC. In other words,

it is clear to the Court how and why the ALJ arrived at the assessed RFC.").

In addition to properly considering the opinion evidence, the ALJ also relied on other

objective medical evidence in the record, as well as Plaintiff's reported activities of daily living.

With respect to Plaintiff's physical impairments, including Addison's disease, degenerative disc

disease, and neuropathy, the ALJ explained that Plaintiff required only routine and conservative

treatment, and her diagnostic studies and physical examinations were largely unremarkable. Tr.

955-59. Specifically, with respect to Plaintiff's 17-year history of Addison's disease, the record

showed that it was treated effectively with hormone replacement therapy and occasional

medication adjustments (Tr. 713-25, 787-93, 832-37, 859-65, 1197-1224), and adrenal hormone

stimulation tests were described as "adequate" or "normal" (715, 787, 793). Tr. 957. In addition,

Plaintiff reported improvement in her symptoms with medication. Tr. 957, 1399. Improvement

with treatment is a proper factor for the ALJ to consider in determining disability. *Reices-Colon v. Astrue*, 523 F. App'x 796, 799 (2d Cir. 2013) (unpublished). As the ALJ correctly explained, "[o]verall, the record shows that the claimant has managed this condition with only routine and conservative medication management, and she reported improved symptoms. Based upon the foregoing, a limitation to light work fully accommodates the claimant's Addison's disease." Tr. 957.

The ALJ also explained why the objective medical evidence supported the finding that Plaintiff could perform light work despite her degenerative disc disease and complaints of neuropathy. Tr. 957-59. As the ALJ discussed, Plaintiff was not referred to a neurologist or orthopedic specialist, nor was physical therapy recommended; rather, Plaintiff treated only with a primary care provider. Tr. 958. Further, although Plaintiff was initially prescribed Neurontin for nerve pain, there was no indication that the medication was refilled, and Plaintiff testified at the first hearing that she took no pain medications. *Id*. The ALJ also explained that a lower extremity ultrasound was negative, and a lumbar spine x-ray revealed only "mild" degenerative changes. Tr. 958, 924, 1350.

Moreover, as the ALJ noted, Plaintiff's physical examinations generally showed no gross motor or sensory deficits. Tr. 957-59, 427, 432, 439, 442, 444, 449-50, 593-596; 604-05, 687, 703, 715, 788, 793, 801; 832-37, 863, 917, 1202, 1210, 1215, 1236-50, 1271, 1275, 1355, 1489, 1502, 1516. On the contrary, Plaintiff routinely exhibited a normal gait, normal muscle strength and tone, normal sensation, full range of motion, and no lower extremity clubbing, cyanosis, or edema. *Id*. Thus, the ALJ properly relied on the medical evidence showing "no more than routine and conservative treatment" and only limited objective deficits as substantial evidentiary support for the RFC finding. Tr. 957-59. *See, e.g., Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL

6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)) (ALJ may consider conservative treatment).

Next, the ALJ explained why the objective medical evidence supported the mental limitations in the RFC finding. Tr. 955, 959-62. As the ALJ discussed, Plaintiff required a few days of inpatient psychiatric care in October 2013 (Tr. 278-284, 285-291), but for the majority of the relevant period, her treatment consisted of routine outpatient counseling and psychiatric medication management visits. Tr. 809-826, 829-831, 856-858, 866-867, 1225-1235, 1414-1461, 1462-1472, 1473-1479, 1571-1593). Tr. 959-62. Plaintiff also reported that she tolerated her medications well with no side effects. Tr. 961. The ALJ further explained that Plaintiff's mental status examinations were relatively unremarkable throughout the entire relevant period. Tr. 953-55, 960-62. In particular, Plaintiff routinely appeared alert and oriented, with appropriate eye contact, normal speech, intact memory, intact attention and concentration skills, normal thought content, normal perception, average cognitive abilities, adequate social skills, and good insight and judgment. *Id*. All of this objective medical evidence supported the ALJ's conclusion that Plaintiff could perform simple, unskilled work of a routine and repetitive nature with no more than incidental contact with the public and no production quotas. Tr. 959-62.

The ALJ also explained that Plaintiff's continued ability to perform a wide range of daily activities supported the RFC finding for a range of light, simple work. Tr. 953-54, 960, 963. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20

C.F.R. § 416.929(c)(3)(i)); *Poupore*, 566 F.3d at 307 (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

As the ALJ discussed, the record showed that Plaintiff cared for her personal needs, cared for three children and pets, helped her elderly parents, cooked, cleaned, drove, paid bills, shopped, painted walls in her home, rode a roller coaster, socialized with family, attended her daughter's softball games, and took vacations to Florida, including a trip to Disney World. Tr. 953-54, 960-63, 191-201, 588-592, 593-596, 809-826, 1351-1413, 1499-1535. She also denied difficulty getting along with family members, friends, or authority figures; she could finish what she started; she could go out alone; and she went out daily. Tr. 953-54, 191-201. The ALJ also noted that Plaintiff admitted having no difficulty sustaining attention, remembering things, or following written and spoken instructions. Tr. 954, 198. As the ALJ properly concluded, "[Plaintiff's] described daily activities [were] not as limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 963. On the contrary, Plaintiff's extensive daily activities "suggest[ed] a greater functional ability than alleged." *Id*.

Plaintiff also suggests that the ALJ's RFC finding did not adequately account for her ability to handle stress. *See* ECF No. 14-1 at 24-25. Plaintiff is wrong. The ALJ captured Plaintiff's credibly established stress-related limitations by restricting her to no more than incidental contact with the public; simple, unskilled work of a routine and repetitive nature; and no production quotas. Tr. 955. Importantly, the ALJ also explicitly discussed why additional stress-related limitations were not warranted. Tr. 964-65. As the ALJ explained, "[g]reater weight is not given, because I find that the claimant's activities of daily living . . . coupled with the clinical findings in the treating notes, indicate that she is able to maintain sufficient attention and concentration and sufficiently

cope with normal work-related stressors and function socially to perform substantial gainful activity at the level assessed above." Tr. 964-65.

Thus, the ALJ did everything required when he accounted for stress-related limitations in the RFC finding and precisely addressed why greater restrictions were not warranted. Tr. 955, 964-65. *See Reyna v. Comm'r of Soc. Sec.*, 2019 WL 4415142, at *5 (W.D.N.Y. Sept. 16, 2019) ("It was the ALJ's duty to assess all of the evidence, resolve any inconsistencies, and formulate an RFC finding that reflected all of Plaintiff's credible limitations."). Accordingly, Plaintiff's claim of error is meritless.

For all the reasons discussed above, the Court finds that substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 14) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE